UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVON MILLER, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:17cv362(KAD) |
| | : | |
| DETECTIVE JOHN NETTO, ET AL., | : | |
| Defendants. | : | |

## RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [ECF #66, ECF #67]

**Preliminary Statement**

The plaintiff, Davon Miller ("Miller"), brings this civil rights action against several

officers with the Derby Police Department, Detectives John Netto and Edward Sullivan, and

Patrol Officer Madura (the Derby Defendants"), as well as several officers with the Ansonia

Police Department, Detective Steve Adcox and Officers McMahon and Guillet (the Ansonia

Defendants"). He claims that the defendants used excessive force during his arrest and subjected

him to unconstitutional conditions of confinement while he was detained at the Derby police

station in September 2015. On April 6, 2018, Miller filed an amended complaint, which is the

operative complaint. *See* ECF No. 38.[1]  The Derby Defendants and the Ansonia Defendants filed

separate motions for summary judgment.  Because the motions raise overlapping issues, the

Court issues a single memorandum of decision. For the reasons set forth below, the

Derby Defendants' Motion for Summary Judgment is GRANTED. The Ansonia Defendants'

Motion for Summary Judgment is GRANTED.

---

[1]The amended complaint erroneously lists Officer Madura as an employee of the Ansonia Police
Department. There is no question that Officer Madura works for the Derby Police Department. *See* Madura Aff.,
ECF No. 66-3.  The court assumes this was a Scribner's error on Miller's part.

**Standard of Review**

The party seeking summary judgment bears the burden of demonstrating "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party may satisfy its burden "by showing – that is pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (*per curium*) (internal quotations and citations omitted).

If a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*

In reviewing the record, the court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). The court may not, however, "make credibility determinations or weigh the evidence. . . . [because] [c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v.*

*LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017) (internal quotation marks and citations omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, however, summary judgment is improper. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

The court reads a *pro se* party's papers liberally and interprets them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite this liberal interpretation, however, allegations unsupported by admissible evidence "do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Plaintiff's Verified Allegations**

The court begins by summarizing the allegations of the verified amended complaint. Miller asserts that on September 2, 2015, defendants Sullivan, Netto, Guillet, McMahon and Madura "slammed me in a big puddle of water tearing my clothes off and my shoes without my permission." While at the Derby Police station, he claims he was "placed in a holding cell at approx. 7:10 a.m." with no shoes or shirt and that his socks were wet. He claims officers turned the air conditioning up until such time as they brought him to be interviewed at approximately 11:32 a.m. Following this interview, Miller asserts that defendants Sullivan and Adcox "sent me back to a holding cell with no clothes, soak[ing] wet … treating me like a[n] animal. I got sick and proceeded to vomit on myself." Finally, Miller assets that "Detectives left me in my own

vomit and refused me a phone call and medical attention until 11:30 p.m. I couldn't take it no more and cooperated with detectives."[2]

## Facts[3]

As of September 2, 2015, Stephen Adcox was employed as a detective in the Ansonia Police Department and Barry McMahon and Michael Guillet were employed as police officers in the Ansonia Police Department. Ansonia Defs' L.R. 56(a)1 ¶ 1. In the early morning hours of September 2, 2015, in the area of Sunset Drive in Derby, Miller fled from members of the Ansonia, Derby and Milford Police Departments. *Id.* ¶ 5. Ansonia Police Officers Guillet and McMahon assisted these officers in pursuing Miller because Miller was a suspect in multiple residential burglaries in Derby, one of which had occurred earlier that morning in Derby and others which had occurred in Ansonia and Derby during the month of August 2015. *Id.* ¶ 9; McMahon Aff. ¶ 4, Ex. B; Guillet Aff. ¶ 4, Ex. C.

---

[2]  Miller filed a motion to suppress his statements given during the subsequent interview on the grounds that his statement was coerced by the conditions in which he was held. The motion was denied and it is that Motion that forms the basis of the Defendants' collateral estoppel argument.

[3]  These facts are taken from the Derby Defendants' Local Rule 56(a)1 Statement ("Derby Defs' L.R. 56(a)1"), [ECF No. 66-2]; Exhibits A-C, [ECF Nos. 66-3 through 66-5], filed in support of the Derby Defs' L.R. 56(a)1 Statement; the Ansonia Defendants' Local Rule 56(a)1 Statement ("Ansonia Defs' L.R. 56(a)1"), [ECF No. 67-2]; and Exhibits A-N, [ECF Nos. 67-4 through 67-17], filed in support of the Ansonia Defs' L.R. 56(a)1 Statement. Local Rule 56(a)2 requires the party opposing a motion for summary judgment to file a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. *See* Local Rule 56(a)2(i). Although Miller filed two memoranda in opposition to the motions for summary judgment, he has not filed a Local Rule 56(a)2 Statement in opposition to either motion for summary judgment. *See* Joint Answer to Summ. J., [ECF No. 81] at 3-10; Suppl. Mem. Opp'n Mot. Summ. J., [ECF No. 93]. Accordingly, the facts, which are asserted in the Local Rule 56(a)1 Statements and that have evidentiary support, are deemed admitted. *See* Local Rule 56(a)1 ("Each material fact set forth in the Local Rule 56(a) 1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule. . . ."). Because the operative amended complaint includes a signed and dated verification page stating that the contents are true under penalty of perjury, the court also considers the allegations asserted in it that are based on the plaintiff's personal knowledge and about which the plaintiff is competent to testify. *See Patterson v. County of Oneida*, 375 F.2d 206, 219 (2d Cir. 2004) ("[A] verified pleading ... has the effect of an affidavit and may be relied upon to oppose summary judgment.").

Officer Guillet caught up to Miller on Sunset Drive, ordered him to get down on the ground, grabbed his arm and physically moved him to the ground. Guillet Aff. ¶ 5. Once Miller was on the ground, Officer Guillet secured his arms/hands behind his back in handcuffs, with the assistance of another Ansonia police officer. *Id.* ¶ 6. Miller was wearing a sweater at some point before Officer Guillet apprehended him but lost the sweater as he was being pursued. Ansonia Defs' L.R. 56(a)1 ¶ 7. Thus, at the time of his arrest, Miller did not have a shirt on. *Id.* ¶ 6.

Officer McMahon did not apprehend, handcuff or make physical contact with Miller. McMahaon Aff. ¶ 5. Officer McMahon did observe Miller after Officer Guillet had detained him in handcuffs on Sunset Drive. *Id.* Neither Officer Guillet, nor Officer McMahon observed a puddle or body of water in the area where Miller was apprehended. Ansonia Defs' L.R. 56(a)1 ¶ 9. When Officer McMahon left the scene, Miller was sitting on a curb in handcuffs. McMahaon Aff. ¶ 10. Officer McMahon did not go to the Derby Police Department or see Miller again at any time that day. *Id.*

Officer Guillet was not involved in transporting Miller to the Derby Police Department and had no further contact with Miller that day. Guillet Aff. ¶¶ 11-12. Ansonia Detective Adcox was not on duty or present at the time of Miller's apprehension, arrest or transport to the Derby police station. Ansonia Defs' L.R. 56(a)1 ¶ 21; Adcox Aff. ¶ 3, Ex. A.

The Derby Defendants were not involved in or present for the arrest or apprehension of Miller on September 2, 2015. Derby Defs' L.R. 56(a)1 ¶ 1. Derby Police Officer Madura transported Miller to the Derby Police Department after Miller had been placed under arrest. Madura Aff. ¶ 2, Ex. A, ECF No. 66-3. After Miller arrived at the police department, Officer Madura had no further contact with him. *Id.* ¶ 4.

The Derby Defendants did not make the temperature in the holding cell area at Derby police station colder when Miller was confined in that area on September 2, 2015. Derby Defs' L.R. 56(a)1 ¶ 2. Nor do they have any knowledge that any other individual attempted to make the holding cell area colder on that date. *Id.* The Derby Defendants have no knowledge of Miller vomiting or requesting medical assistance during his confinement at the Derby police station in September 2015. *Id.* ¶ 3. Derby Police Detectives Netto and Sullivan interviewed Miller at the Derby police station at approximately 11:30 a.m. on September 2, 2015. *Id.* ¶ 4. During that interview, Miller received a shirt. *Id.*

At Miller's request, Derby Detectives Netto and Sullivan began a second interview at the Derby Police Department at approximately 11:00 p.m. on September 2, 2015. Ansonia Defs' L.R. 56(a)1 ¶ 18; Ex. E, DVD, Second Interview. Miller requested that his mother be present for that interview, *Id.* ¶ 17, so Detectives Netto and Sullivan waited with Miller until his mother arrived. *Id.* ¶19. After Miller's mother's arrival at approximately 11:46 p.m., Ansonia Police Detective Adcox entered the interview room. *Id.* ¶ 20.

The interview continued until approximately 1:42 a.m. on September 3, 2015. *Id.* ¶ 22. Miller was wearing a short-sleeved shirt during the interview and did not complain about the temperature, that he had vomited or felt sick or that he required medical attention. *Id.* ¶¶ 24-25.

Derby and Ansonia police officials arrested and charged Miller with multiple counts of burglary in separate criminal cases. *See* Exs. J-M (Arrest Warrants & Ansonia Police Incident Reports); *State v. Miller*, AAN-CR15-0152936-T; AAN-CR15-0090698-T; AAN-CR15-0090694-T.[4] On July 11, 2017, Miller pleaded guilty to one count of burglary in the first degree

___

[4] The State of Connecticut Judicial Branch website reflects that on September 2, 2015, Derby police officers arrested Miller for a burglary committed earlier that day and on November 17, 2015, Ansonia police officers

in violation of Connecticut General Statutes § 53a-101(a)(3) in each of three cases and on

November 3, 2017, a judge sentenced Miller to a twenty-year term of imprisonment, execution

suspended after five years and followed by three years of probation in each case. Ansonia Defs'

L.R. 56(a)1 ¶ 33; Ex. I (Plea Canvass); *State v. Miller*, AAN-CR15-0152936-T; AAN-CR15-

0090698-T; AAN-CR15-0090694-T.

**Discussion**

In seeking summary judgment, the Derby Defendants assert that they were not present or

involved in Miller's apprehension or arrest; collateral estoppel bars the claims pertaining to the

conditions of confinement at the Derby police station, and they did not violate Miller's

constitutional rights in connection with the conditions of confinement while he was at the Derby

police station. Similarly, the Ansonia Defendants assert that they were either not present for or

involved in Miller's arrest, or if they were, they did not use excessive force during and in the

course of the same; collateral estoppel bars the conditions of confinement claims; they were not

responsible for the conditions of confinement at the Derby police station; they were not

deliberately indifferent to his health and well-being, and they are entitled to qualified immunity

because their conduct was objectively reasonable.

**Excessive Force**

"'The Fourth Amendment prohibits the use of excessive force in making an arrest, and

whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness

standard.'" *Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir.2018) (quoting *Brown v. City*

---

arrested Miller for burglaries committed on August 6, 2015 and August 12, 2015. This information may be found at: http://www.jud.ct.gov/jud2.htm under Superior Court Case Look-up; Criminal/Motor Vehicle; Convictions - by Docket Number using AAN-CR15-0152936-T; AAN-CR15-0090698-T; AAN-CR15-0090694-T KNL-CR12-0119499-T (Last visited on Sept. 19, 2019).

*of New York*, 798 F.3d 94, 100 (2d Cir. 2015)). "The 'proper application' of this standard 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The issue of reasonableness necessarily includes consideration of the reality that law enforcement officers are often forced to make quick decisions under stressful and rapidly evolving circumstances. *Graham*, 490 U.S. at 396-97. Thus, whether "a particular use of force" was reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Brown*, 798 F.3d at 100-01.

Miller alleges that Derby Police Detectives Netto and Sullivan, Derby Police Officer Madura and Ansonia Police Officers McMahon and Guillet slammed him into a puddle at the time of his arrest. On this issue, Detectives Netto and Sullivan and Officer Madura filed affidavits stating that they were not involved in or present for Miller's apprehension or arrest on September 2, 2015. *See* Derby Defs.' L.R. 56(a)1 ¶ 1, Exs. A-C, Madura, Netto & Sullivan Affs. ¶¶ 2. Officer McMahon has filed an affidavit indicating that he was present at the scene of Miller's arrest but did not participate in apprehending him or handcuffing him and did not make any physical contact with him. *See* Ansonia Defs.' L.R. 56(a)1, Ex. A, McMahon Aff. ¶ 5. In his deposition, Miller was unable to identify the officers and detectives allegedly involved in the force used against him at the time of his arrest and conceded that the police incident reports accurately reflected which officers and detectives were involved in his apprehension and arrest. *See* Ansonia Defs.' L.R. 56(a)1 ¶ 3; Ex. D, Miller Dep. Tr. 16:20-18:13; 47:21-48:15. Miller has

provided no evidence to contradict the affidavits of Netto, Sullivan, Madura or McMahon.

Accordingly, these defendants have met their burden of establishing the absence of a genuine issue of material fact as to whether Detective Netto, Detective Sullivan, Officer Madura and Officer McMahon used excessive force against Miller during his apprehension and arrest.

Ansonia Police Officer Guillet avers that he pursued Miller in the area of Sunset Avenue in Derby, caught up to him; ordered him to lay on the ground; grabbed his arm and brought him to the ground, and then placed him in handcuffs. *See id.*, Ex. C, Guillet Aff. ¶¶ 4-5. Officer Guillet did not strike or inflict injury on Miller. *Id.* ¶ 5. Guillet did not see a puddle in the area where he brought Miller to the ground. *Id.* ¶ 7. Officer McMahon also avers that he did not observe the use of force by any officer against Miller during his arrest or during the time that he was detained at the scene of his arrest. Neither did Officer McMahon notice a puddle in the area where Miller was apprehended and detained. *See* id., Ex. A, McMahon Aff. ¶¶ 7-8.

Miller testified at his deposition that after he was handcuffed, he sat in a puddle for at most fifteen minutes. *See id.*, Ex. D, Miller Dep. Tr. 23:21-24:2. In a police incident report filed on September 21, 2015, Detective Sullivan related that after Miller's apprehension and placement in handcuffs by Officer Guillet, Miller did not have on a shirt and his sneakers and sweatpants were soaking wet. *See* Miller Mem. Opp'n Mots. Summ. J., ECF No. 81, at 37 (Sullivan Suppl. Incident Report dated Sept. 21, 2015).

Miller does not dispute that he was running from police officers on September 2, 2015. Nor has Miller submitted any evidence to contradict Officer Guillet's affidavit in which he states that when he caught up to Miller, he ordered Miller to stop and lay on the ground. There are no allegations or evidence that Miller suffered any physical injuries as a result of the force used by

9

Guillet in apprehending him and applying handcuffs to his wrists. The court concludes that no reasonable juror could find it objectively unreasonable for Officer Guillet to have grabbed Miller by the arm to bring to the ground and to handcuff him given that Officer Guillet was aware that Miller was a suspect in multiple burglaries and he did not respond to Guillet's order to stop running and to lay on the ground. And even if there was a puddle or it was wet in the area in which Miller was brought to the ground, that fact in and of itself does not suggest the use of unreasonable force by Officer Guillet. Accordingly, both motions for summary judgment with respect to the excessive force claim is granted.

**Seizure of Sneakers**

The complaint also includes an allegation that at the time of his arrest on September 2, 2015, Detectives Netto and Sullivan and Officers Guillet, Madura and McMahon removed and confiscated his sneakers without his permission. Liberally construed, this allegation appears to state a claim for an unlawful seizure in violation of Miller's Fourth Amendment rights. Miller does not really press this claim and the defendants do not specifically address this claim. Notwithstanding, the Court concludes that summary judgment is appropriate to the extent such a claim is asserted by Miller.

Incident to a lawful arrest, a full search of the person arrested may be conducted without a warrant. *See United States v. Robinson*, 414 U.S. 218, 235 (1973) ("It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."). Accordingly, a police officer is entitled to inspect the possessions of the arrestee, including the person's clothing, and if

the inspection reveals items of evidentiary value, the officer may seize the items as "instrumentalities . . . probative of criminal conduct." *Id.* at 236; *see also United States v. Edwards*, 415 U.S. 800, 806, 94 S. Ct. 1234, 1238, 39 L. Ed. 2d 771 (1974) ("When it became apparent that the articles of clothing were evidence of the crime for which Edwards was being held, the police were entitled to take, examine, and preserve them for use as evidence, just as they are normally permitted to seize evidence of crime when it is lawfully encountered.") (citations omitted).

Here, incident reports completed by Detectives Netto and Sullivan on September 2, 2015, indicate that Miller's sneakers were seized as evidence to determine whether footprints at the scene of one of the attempted burglaries matched the tread on the soles of Miller's sneakers. *See* Ansonia Defs' L.R. 56(a)1, Ex. H, Netto Incident Report dated Sept. 2, 2015; Miller Mem. Opp'n Mots. Summ. J., ECF No. 81, at 25, 28 (Netto Incident Report dated Sept. 2, 2015; Sullivan Suppl. Incident Report dated Sept. 21, 2015). In addition, during Miller's first interview, Netto informed Miller that his sneakers had been seized for evidentiary purposes. *See* Ansonia Defs' L.R. 56(a)1, Ex. E, DVD, First Interview, Sept. 2, 2015 at 16:58-17:04. Miller has submitted no evidence to contradict this evidence. Thus, the seizure of Miller's sneakers, even without his permission, was not unreasonable under the Fourth Amendment. Summary judgment is granted as to any Fourth Amendment claim based upon this seizure, to the extent asserted.

### Conditions of Confinement

Miller alleges that an officer placed him in a holding cell at the Derby police station at approximately 7:10 a.m. on September 2, 2015. He contends that his pants and socks were wet,

he had no shoes or a shirt and that it was cold because the defendants had turned the air conditioning up. Miller remained in the holding cell until approximately 11:30 a.m. when an officer brought him to a room in the station to be interviewed. Miller claims that after a short interview, he was returned to the holding cell without a shirt or shoes. At some point during his confinement in the holding cell before he returned to the interview room, Miller vomited. At approximately 11:30 p.m., Detectives Adcox and Netto interviewed Miller again.

In *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017), the Second Circuit considered the Fourteenth Amendment due process claims of twenty individuals who had been arrested and "subjected to appalling conditions of confinement while held pre-arraignment at Brooklyn Central Booking."[5] *Id.* at 21. The court held that to state a claim for allegedly unconstitutional conditions of confinement under the Fourteenth Amendment, a detainee must meet two prongs. *Id.* at 29. First, a detainee must allege that objectively "the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health . . . which includes the risk of serious damage to physical and mental soundness." *Id.* at 30 (internal quotation marks and citations omitted). Under this prong, a prisoner may not be deprived of basic human needs such as "food, clothing, shelter, medical care, or reasonable safety." *Id.* (citation omitted).

Under the second prong, also called the "*mens rea*" prong, a detainee must assert either that the prison official "acted intentionally to impose the alleged condition, or recklessly failed to

---

[5] The Court recognizes that there is an arguably unanswered question in this Circuit as to whether post-arrest but pre-arraignment conditions of confinement claims should be analyzed under the Fourteenth Amendment or the Fourth Amendment. The Second Circuit, in *Darnell,* did not address the distinction between pre-trial detainees and pre-arraignment detainees but several courts have and have determined that prior to arraignment, an arrestee's claims should be analyzed under the Fourth Amendment. *See,* Order Adopting Recommended Ruling, *Conquistador v. Meriden*, 3:18-cv-00685-KAD (D. Conn. Sept. 5, 2019) (ECF No. 83). Recommended Ruling at 26-31, *Conquistador v. Meriden*, 3:18-cv-00685-KAD (D. Conn. Aug. 13, 2019) (ECF No. 77). The parties did not raise this issue and they briefed the claims under the standards applicable to Fourteenth Amendment. Accordingly, the Court analyzes the claims under these standards.

act with reasonable care to mitigate the risk that the condition posed to [him or her] even though the [prison]-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. Negligent conduct by prison of police officials, however, does not meet the *mens rea* prong of the Fourteenth Amendment standard. *See id.* at 36 ("A detainee must prove that an official acted intentionally or recklessly, and not merely negligently.")

### Medical Needs

Miller claims Detectives Sullivan and Adcox left him in the holding cell after the first interview "in [his] own vomit" and refused to provide him with medical attention.

A sufficiently serious need or medical condition as one that is urgent and "may result in degeneration or extreme [or chronic] pain." *Chance v. Armstrong*, 143 F.3d 698 702 (2d Cir. 1998). Even if Miller vomited as alleged in the twelve-hour period that he was confined in the holding cell between the first and second interviews, this does not constitute a sufficiently serious medical condition or an excessive risk of harm to Miller's health. *See Tafari v. Weinstock*, No. 07CV0693, 2010 WL 3420424, at *7 (W.D.N.Y. Aug. 27, 2010) (symptoms of constipation, vomiting and stomach pain did not meet objective component of Eighth Amendment standard because they were not sufficiently serious); *Ross v. McGinnis,* 2004 WL 1125177, at *10 (W.D.N.Y. Mar. 29, 2004) (holding that complaints of abdominal pain, vomiting, heartburn, constipation, and extreme body heat do not constitute a serious medical need). Thus, the allegations, even if proven, do not meet the objective component of the Fourteenth Amendment standard and summary judgment on this claim is appropriate for this reason.

But even if this alleged medical condition constituted a serious risk of harm to his health,

there is no evidence to even suggest that Detectives Adcox, Sullivan or Netto acted in a deliberately indifferent or unreasonable manner in response to Miller's condition. The undisputed evidence submitted by both the Derby and the Ansonia Defendants reflects that Ansonia Police Detective Adcox was not present during the first interview of Miller and that he did not enter the interview room for the second interview of Miller until approximately 11:46 p.m. on September 2, 2015. *See* Ansonia Defs' L.R. 56(a)1; Ex. E, DVD, First and Second Interviews, Sept. 2, 2015 – September 3, 2015. Detective Adcox avers that at no time during his presence at the second interview did Miller vomit, appear ill, complain of illness or injury or request medical treatment. *See* Ansonia Defs' L.R. 56(a)1, Ex. A, Adcox Aff. ¶ 7. Detectives Netto and Sullivan, who were present for Miller's first and the second interviews, filed affidavits stating therein that they were not aware that Miller had vomited at any time during his confinement in the Derby police station or that he requested or required medical treatment for any medical symptoms or conditions. *See* Derby Defs.' L.R. 56(a)1 ¶ 1, Exs. B, C, Netto & Sullivan Affs. ¶¶ 5. Additionally, and significantly, the video recording of the second interview reflects no mention by Miller of having vomited or any requests for assistance or evaluation of any medical conditions or symptoms. *See* Ansonia Defs' L.R. 56(a)1; Ex. E, DVD, Second Interview, Sept. 2, 2015 – 11:02 p.m. to Sept. 3, 2015 at 0:00:35-2:40:30.

Miller has not presented evidence which contradicts these affidavits or the videotape of his second interview. Accordingly, Detectives Netto, Sullivan and Adcox have met their burden of demonstrating the absence of a genuine issue of material fact with respect to the *mens rea* prong of the analysis. Miller has not come forward with evidence to create such an issue. Both motions for summary judgment are granted as to the Fourteenth Amendment, deliberate

indifference to medical needs claim against Detectives Netto, Sullivan and Adcox.

**Cold Temperatures and Lack of Clothing**

Miller also asserts that the cold temperatures in the holding cell, coupled with his lack of clothing and wet clothing violated the Fourteenth Amendment. In response, the Derby Defendants and the Ansonia Defendants assert that they did not expose Miller to cold temperatures or deprive him of the basic human need for clothing during the relatively short time periods that he was confined in the holding cell and/or the interview room at the station. Exposure to cold temperatures for a prolonged period constitutes the deprivation of a basic human need for warmth. *See Gaston v. Coughlin*, 249 F.3d 156, 165 (2d Cir. 2001) (finding that inmate was exposed to "temperatures near or well below freezing for a five-month period" where windows in cell block were broken); *Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988) (inmate was exposed to "bitterly cold temperatures for approximately three months ... when the large window frames in his cell block were empty"); *Wright v. McMann*, 387 F.2d 519, 521-22 (2d Cir. 1967) (inmate was kept in "strip" solitary confinement cell for periods of thirty-three and twenty days, without clothing other than underwear, and where the windows were opened to "subfreezing" temperatures at night). Unlike the nature of the exposure to extreme temperatures in these cases, Miller alleges that he was exposed to cold temperatures due to increased air conditioning in the cell block. He also relies upon the claim that he was without a shirt and shoes and that his socks and pants were wet during his detention from 7:10 a.m. on September 2, 2015 when he arrived at the Derby police station until the end of the second interview on September 3, 2105 at 1:42 a.m.

**Officers Guillet and McMahon**

Officers Guillet and McMahon filed affidavits stating that they did not enter the Derby police station on September 2, 2015. *See* Ansonia Defs' L.R. 56(a)1, Exs. B, C, McMahon Aff. ¶ 10; Guillet Aff. ¶ 12. Miller has offered no evidence to contradict these affidavits. Thus, Officers Guillet and McMahon have demonstrated the absence of a genuine issue of material fact as to their awareness of or involvement in any conditions to which Miller was exposed during his confinement at the Derby police station on September 2, and 3, 2105. The Ansonia Defendants' motion for summary judgment is granted as to this Fourteenth Amendment conditions of confinement claim against Officers Guillet and McMahon.

### Detectives Adcox, Netto, Sullivan and Officer Madura

It is undisputed that Miller did not have a shirt on when he was arrested and that he did not have shoes or a shirt on, but was wearing pants and socks, as of the beginning of the first interview at 11:30 a.m. at the Derby police station. The videotape of the first interview reflects that as soon as Miller entered the interview room without his shirt on, Detective Netto offered to turn down the air conditioning. *See* Ansonia Defs' L.R. 56(a)1, Ex. E, DVD, First Interview, Sept. 2, 2015 at 1:40. When Miller complained that he was cold and his socks were wet, Detective Netto asked another police official to get Miller a shirt and a blanket. *Id.* at 3:35-4:00. Approximately four minutes after Miller entered the interview room, an individual brought Miller a short-sleeved shirt which Miller put on. *Id.* at 5:54. Miller was wearing the shirt when he left the interview room approximately twelve minutes later. *Id.* 17:24. After the interview, Detective Sullivan returned Miller to the holding cell. During the second interview, which began approximately twelve hours later and lasted almost three hours, Miller was wearing the same short-sleeved shirt, pants and socks. *See id.*, Ex. E, DVD, Second Interview, Sept. 2, - 3, 2015

16

at 0:00:35-2:40:30.

Miller has presented no evidence to demonstrate that the cold temperature and lack of shoes and a shirt for the approximately four-hour time period that he was in a holding cell before the first interview, or the cold temperature during the approximately twelve-hour period between the first and second interviews, posed a serious risk of harm to his health. Even if the court considers the entire time period from Miller's arrival at the station and placement in the holding cell through the end of the second interview, Miller was exposed to cold temperatures for at most, nineteen hours. These conditions were not sufficiently severe or prolonged to meet the objective prong of the Fourteenth Amendment standard. *See e.g. Stevens v. City of N.Y.*, No. 10 Civ. 5455(PGG), 2011 WL 3251501, at *3 (S.D.N.Y. July 22, 2011) (holding pre-trial detainee housed in a cell with a broken window covered by a garbage bag during cold and rainy weather for as many as four days did not allege a Fourteenth Amendment violation); *Borges v. McGinnis,* No. 03–CV–6375 CJS, 2007 WL 1232227, at *6 (W.D.N.Y. Apr. 26, 2007) (keeping inmate, clothed only in paper gown and slippers, with a thin mattress pad and no blanket, in a room with an open window that reduced the temperature to approximately 50 degrees, for three days, not sufficient to satisfy objective prong of Eighth Amendment violation); *Smith v. Burge,* No. 9:03–CV–0955 (LEK/GHL), 2006 WL 2805242, at *7 (N.D.N.Y. Sept. 28, 2006) (finding no Eighth Amendment violation when "at most, Plaintiff was deprived of various property (except for a T-shirt and underwear) for less than one day while confined to a cell that was 'cold' or 'very cold' due to some gallery windows being open in late-March"). In addition, Miller alleges only that his exposure to the cold temperature without a shirt or shoes caused him to vomit while he was held. As indicated above, this allegation is not sufficiently severe to

constitute a serious deprivation to his health.  Thus, Miller has not demonstrated that cold conditions at the Derby police station posed a substantial or excessive risk of serious harm to his health.

The defendants also argue that Miller has not met the *mens rea* prong of the Fourteenth Amendment standard.  Officer Madura filed an affidavit stating that he did not have any contact with Miller after he transported him to the station, did not interview Miller at the station or do anything to make the room temperature in the holding cell or interview room at the station colder.  *See* Derby Defs.' L.R. 56(a)1 ¶ 1, Ex. A, Madura Aff. ¶¶ 2, 4-5.  Miller has introduced no evidence to contradict this affidavit.

Miller does not allege or provide evidence to demonstrate that he made either Netto or Sullivan aware of the conditions in the holding cell at any time prior to his first interview. Detectives Netto and Sullivan aver that they did not turn the air conditioning up or do anything else to make the holding cell area colder during Miller's confinement at the Derby police station on September 2, and 3, 2015.  *See id.*, Exs. B, C, Netto & Sullivan Affs. ¶¶ 4.  Additionally, the video footage reflects that in response to Miller's complaints that he was cold during the first interview, Detective Netto secured a shirt for Miller and turned the air conditioning down.  *See* Ansonia Defs' L.R. 56(a)1, Ex. E, DVD, First Interview, Sept. 2, 2015 at 1:40-5:54.  Miller was wearing the shirt when he returned to the holding cell after the first interview.  *See id.* at 17:16-17:24.

Detective Adcox avers that he was only present at the Derby police station during part of the second interview of Miller from until 11:46 p.m. on September 2, 2018 to approximately 1:42 a.m. on September 3, 2015.  Ansonia Defs' L.R. 56(a)1 ¶ 21; Ex. A, Adcox Aff. ¶ 4; Ex. E,

Second Interview, Sept. 2, 2015 – 11:02 p.m. to Sept. 3, 2015 at 0:44:50–2:40:30.  During the

second interview, he observed that Miller was wearing a shirt and pants and that Miller did not

make any complaints about illness or injury.  *See id.*, Ex. A, Adcox Aff. ¶¶ 6-7.  At no time

during his presence at the Derby police station on September 2, and 3, 2015 did Detective Adcox

adjust the air conditioning in the interview room or observe anyone else adjust the air

conditioning.  *See id.* ¶ 10.

The videotape of the second interview reflects that Miller was wearing a short-sleeved

shirt, pants and socks and did not mention that he was cold or complain about the temperature in

the holding cell or the interview room.  *See id.*, Ex. E, DVD, Second Interview, Sept. 2, - 3, 2015

at 0:00:35-2:40:30.  As Miller was leaving the room after the interview, he can be heard asking

Detective Netto to get him a sweater and stating that he can't feel his body.  *Id.* at 2:40:30-

2:40:43. Detective Netto responds that he has turned the air conditioning down and will try to get

Miller a sweater.  *Id.*

In light of this evidence, Detectives Netto, Sullivan and Adcox and Officer Madura have

met their burden of demonstrating the absence of a genuine issue of material fact as to the *mens*

*rea* prong of this Fourteenth Amendment claim. Miller has not come forward with evidence to

create such an issue.  Both motions for summary judgment are granted as to this Fourteenth

Amendment conditions of confinement claim as well.

**Conclusion**[6]

The Derby Defendants' Motion for Summary Judgment, [**ECF No. 66**] and the Ansonia

---

[6] As the Court has granted summary judgment in favor of all defendants for the reasons set forth above, the Court
need not reach the question of whether Miller's claims are barred by the doctrine of collateral estoppel or whether
the defendants are entitled to qualified immunity.

Defendants' Motion for Summary Judgment, [**ECF No. 67**], are **GRANTED.** The Clerk is directed to enter judgment for the defendants and close this case.

SO ORDERED at Bridgeport, Connecticut, this 24th day of September, 2019.

____/s/_____
Kari A. Dooley
United States District Judge